UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**COURTNEY B. ANDERSON,**            CASE NO.: 5-20-CV-00041-JSM-PRL

    Plaintiff,

v

**BEST BUY STORES, L.P.,** a foreign
Limited partnership; **COUPONS IN THE**
**NEWS** d/b/a couponsinthenews.com,
a foreign corporation; **NAMECHEAP, INC.,**
a foreign corporation; **WHOISGUARD, INC.,**
a foreign corporation; and
**FICTITIOUS DEFENDANTS DOEs 1-3,**

    Defendants.
_____/

**DEFENDANTS NAMECHEAP, INC. AND WHOISGUARD, INC'S MOTION AND**
**MEMORANDUM TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), Defendants Namecheap, Inc. ("Namecheap") and WhoisGuard, Inc. ("WhoisGuard") (collectively, "Defendants") move to dismiss Plaintiff Courtney B Anderson's ("Plaintiff") Second Amended Complaint ("SAC") and show the Court as follows:

**INTRODUCTION**

Plaintiff asserts claims against Defendants for violation of Florida Statute 540.08, violation of common law invasion of privacy, intentional infliction of emotional distress, unjust enrichment, and agents for undisclosed principal. These claims are subject to a motion to dismiss as Defendants are immune from liability under Section 230 of the Communications Decency Act ("CDA"), and because Plaintiff fails to allege any facts that would support a claim against Defendants under the

standards set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

*First*, the violation of Fla. Stat. 540.08 must be dismissed with prejudice because Section 230 of the CDA bars Plaintiff's attempt to hold Defendants liable for the unauthorized publication of her name or likeness by a third party who happened to use Namecheap's registration services and WhoisGuard's proxy services to register the Domain. Even if Section 230 of the CDA does not bar Plaintiff's claim, she fails to state facts sufficient to allege a claim for violation of Fla. Stat. 540.08. Specifically, Plaintiff has not and cannot allege that Defendants published or used her name or likeness for a commercial purpose.

*Second*, Plaintiff only makes conclusory allegations and fails to state facts sufficient to support claims against Defendants for violation of common law invasion of privacy, intentional infliction of emotional distress, unjust enrichment, and agents for undisclosed principal.

Namecheap is a domain name registrar and is the registrar of the domain used by Defendant Coupons In the News d/b/a couponsinthenews.com ("Coupons"). SAC, p. 2 at ¶ D. Namecheap offers a proxy service through WhoisGuard, whose only service is to register and administer the domains of Namecheap's customers, and to substitute WhoisGuard's contact information in the place of the registrants' name and contact information in order to protect the registrants' information from the public record.[1] *Id.*, p. 2 at ¶ E; Exh. A hereto, ¶ 2. The proxy service is

---

[1] Defendant requests that the Court take judicial notice of the WhoisGuard Service Agreement attached as Exhibit A hereto. The Complaint alleges that there is an agreement between WhoisGuard and Coupons under which "WHOISGUARD is the proxy for COUPONS and in fact, is believed to be the owner of COUPONS." SAC, ¶ 28; p. 2 at ¶ D,. Where the Complaint makes allegations concerning the agreement between the parties, it is appropriate for the Court to consider the terms of the referenced agreement in ruling on a motion to dismiss, particularly where that agreement is easily accessible to the public. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

memorialized in an agreement between WhoisGuard and the Namecheap customers who elect this proxy service. This WhoisGuard Service Agreement sets forth the services provided by WhoisGuard, which is limited to administering and registering the customer's domain name, and to keep the customer's registration information confidential from the public Whois database. *See* Exh. A hereto, ¶ 2. The domains are expressly controlled by Namecheap's customers. *See Id*. at Exh. A, ¶¶ 2-3

Plaintiff alleges that on January 16, 2016, she was shopping in a Best Buy store when she had a dispute with a Best Buy store employee regarding coupons. SAC ¶ 1. The Best Buy manager called 911 and had Plaintiff arrested for disorderly conduct. *Id*. at ¶¶ 2, 95.

Plaintiff alleges that on or about January 27, 2016, Coupons, in their online Internet advertisement ("Subject Advertisement"), used a picture/article that labeled Anderson the "Pantless Couponer" and superimposed her photograph over the internationally recognizable Best Buy logo. Attached to the photograph was an article that stated Plaintiff "allegedly dropped her pants," along with other allegedly "salacious, derisive and scornful fabrication intentionally mocking [Plaintiff] Anderson." *Id*. at ¶¶ 3, 11. Plaintiff further alleges that neither Coupons, Best Buy nor any other Defendant, nor anyone acting on their behalf, ever contacted Plaintiff to obtain permission to use her photograph in connection with their promotional materials nor has Plaintiff ever given authority to anyone to so use her photograph.

Plaintiff alleges that each of the Defendants knew, or should have known, that Plaintiff's photograph was being used for commercial purposes without her knowledge and that the content posted was salacious, derisive and scornful for the purpose of soliciting more business for each of the defendants. *Id*. at ¶ 11. Plaintiff further alleges that each Defendant has benefitted from the

3

misappropriation of Plaintiff's photograph, from the use of her photograph without her authorization or consent and without any payments made to her. *Id*. at ¶ 13.

## ARGUMENT

I. **Legal Standard**

Under Rule 12(b)(6), a district court properly dismisses a claim if plaintiff's complaint evidences "that there [are] no set of facts entitling him to relief." *Brown v. Crawford County, GA.*, 960 F.2d 1002, 1010 (11th Cir. 1992). A complaint must allege enough facts to state a claim against a particular defendant that is plausible, not merely conceivable. *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" if the plaintiff pleads facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A plaintiff must allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Although the district court should grant the plaintiff leave to amend where a more carefully crafted complaint might state a claim, (*Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)), the district court need not grant leave to amend if amendment would be futile. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (finding that amendment would be futile where plaintiff was granted leave to amend twice and amended complaint still contained defects).

II. **Section 230 of the Communications Decency Act Bars Plaintiff's Claims Against Defendants as a Matter of Law.**

Section 230 of the CDA ("Section 230") bars Plaintiff's attempt to hold Defendants liable for the unauthorized publication of her name or likeness by a third party who happened to use Namecheap's registration services and WhoisGuard's proxy services to register the Domain.

4

Section 230 prohibits any claim against a "provider or user" of an "interactive computer service" that treats it "as the publisher or speaker of any information provided by *another* information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). The CDA defines "interactive computer service" ("ICS") as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer servicer". *Id*. at § 230(f)(2). "Information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id*. at § 230(f)(3). The CDA also provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *Id.* at § 230(e)(3).

The Florida Supreme Court has held that the CDA "expressly bars 'any actions'" under Florida law that conflict with it. *See Doe v. America Online, Inc.*, 783 So.2d 1010, 1018 (Fla. 2001); *see also Giordano v. Romeo*, 76 So. 3d. 1100, 1102 (Fla. 3d DCA 2011) (holding that operator of website that hosted defamatory statements "enjoys *complete immunity* [under the CDA] from any action brought against it as a result of the postings of third party users of its website." (emphasis added).). In short, the CDA provides that a plaintiff defamed on the internet can sue the original speaker, but "cannot sue the messenger." *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,* 519 F.3d 666, 672 (7th Cir.2008).

Section 230 has time and again been interpreted broadly in favor of internet companies and against vexatious litigants who seek to hold those companies liable for content provided by others. Indeed, it is beyond serious dispute that ICSs like Namecheap and WhoisGuard cannot be liable for content originating with a third-party user of its services, such as Coupons in this case. *See Dowbenko v. Google, Inc.*, 582 Fed. Appx. 801, 805 (11th Cir. 2014) (holding that Plaintiff's

5

defamation claim was barred by § 230(c)(1) where defendant was an ICS provider and defamatory content was authored and posted by third-party anonymous bloggers); *Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008), *cert. denied* 129 S. Ct. 600 (2008) ("Parties complaining that they were harmed by a Web site's publication of user-generated content have recourse; they may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish content online"); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-25 (9th Cir. 2003) (website operator not liable for defamatory content published by anonymous third party user); *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095 (M.D. Fl. Feb. 15, 2008) (holding that Defendants are entitled to immunity under the CDA where they were not responsible for the creation or development of the defamatory content); *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating from a third party user of the service"); *see also Green v. America Online*, 318 F.3d 465, 470-72 (3d Cr. 2003) (same); *Ben Ezra, Weinstein, & Co. v. America Online, Inc.*, 206 F.3d 980, 984-85 (10th Cir. 2000) (same).

Companies like Namecheap and WhoisGuard have been considered ICSs as they are a computer service provider that enables computer access for multiple users to a server. *See Ricci v. Teamsters Union Local 456*, 781 F.3d 25 (2nd Cir. 2015) (finding domain name registrar GoDaddy an ICS within the meaning of the CDA). Plaintiff alleges that Coupons (not Namecheap or WhoisGuard) was the "information content provider" by publishing the Subject Advertisement on Coupon's website. SAC, ¶¶ 3, 6, 7. Plaintiff alleges that Namecheap was the registrar for the Coupons domain and that WhoisGuard (by providing proxy services) is listed as Coupon's registrant and contact. *Id.* at ¶¶ D, E, 92, Exh. D. Plaintiff does not allege any facts to demonstrate

that Namecheap acted in any other manner than as a domain name registrar, or that WhoisGuard did anything else but provide proxy services for the Coupons domain. In fact, any allegations that Defendants were "information content providers" or that they were complicit or conspired with Coupons to publish the Subject Advertisement are conclusory, without any factual support, and fail to meet the plausibility standard set forth by *Iqbal* and *Twombly*. *Id*. at ¶¶ 25-26, 28, 42-45, 47-49; 62, 67, 80, 84, 90-93.

Each of Plaintiff's claims against Defendants are based on the material published by Coupons on its website. Given that Defendants are ICSs under the CDA and Plaintiff cannot amend her claims to overcome Defendants' immunity, Plaintiff's claims against Defendants must be dismissed with prejudice.

### III.     Plaintiff Fails to State a Claim Against Defendants for Statutory Misappropriation of Image Under F.S. 540.08.

Even if the CDA does not preclude Plaintiff's claim under Fla. Stat. 540.08, Plaintiff fails to state a claim under Fla. Stat. 540.08 as against Defendants.

The plain terms of Fla. Stat. 540.08 prohibits "publish[ing], print[ing], display[ing] or otherwise publicly us[ing] *for* purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use." Fla. Stat. § 540.08(1) (emphasis added). Plaintiff cannot state a claim under Fla. Stat. 540.08 without any allegations that Defendants authored nor had any editorial role in the publication of the Subject Advertisement. *See Dowbenko*, 582 Fed. Appx. at 805 (holding that district court properly dismissed plaintiff's state law defamation claim where Defendant Google neither authored the allegedly defamatory article manipulated its search results to prominently feature the article at issue); *see also Almeida v. Amazon.com, Inc.*, 456 F.3d 1316,

7

1326 (11th Cir. 2006) (granting summary judgment in favor of defendant where defendant did not make any editorial choices as to the images at issue displayed on its website).

Here, Plaintiff fails to allege any facts in the SAC that Namecheap or WhoisGuard authored, edited or otherwise published the advertisement at issue in the SAC. In fact, Plaintiff admits that it was Coupons that made the publication. *See* SAC, ¶ 23. Plaintiff does allege that Namecheap is a "publisher or speaker" of the advertisement within the meaning of the CDA, but this allegation is conclusory, without any factual support, and was clearly asserted in an effort to circumvent CDA immunity for Namecheap. *See Id*. at ¶ 25.

Similarly, WhoisGuard is alleged to be "complicit" in the publication due to its alleged "business relationships" with Coupons, but there are no facts to demonstrate that WhoisGuard was otherwise involved in the publication of the advertisement. *Id*. at ¶ 26. Plaintiff alleges that by providing proxy services, WhoisGuard is Coupons' owner, and therefore published the advertisement. SAC, ¶¶ E, 28. However, there are no facts to support this allegation. Moreover, per WhoisGuard's Service Agreement, WhoisGuard's function is only as an administrator of its customers' domain by protecting the customers' identity and contact information from the public record; it is the customers' (e.g. Coupons) who controls their respective domains. *See* Exh. A. ¶¶ 2-3. WhoisGuard has no involvement in or control over what is published on the Coupons' website.

In addition, Plaintiff has failed to allege facts demonstrating that Defendants used the Plaintiff's photograph for any trade, commercial or advertising purpose. "[T]o state a misappropriation claim, a plaintiff must allege the defendant 'commercially used the value of the plaintiff's name for commercial, trade, or advertising purposes." *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1260 (S.D. Fla. 2010). The terms "trade", "commercial", or

8

"advertising purpose" mean using a person's name or likeness to ***directly*** promote a product or service. *See Valentine v. CBS, Inc.*, 698 F.2d 430, 433 (11th Cir. 1983) (recognizing that the proper interpretation of Fla. Stat. § 540.08 requires the plaintiff to prove that the defendants used a name or likeness to directly promote a product or service); *see also Tyne v. Time Warner Entm't Co. L.P.*, 901 So.2d 802, 808 (Fla. 2005) (stating that "[t]he purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else"); *Loft v. Fuller*, 408 So.2d 619, 622-23 (Fla. Dist. Ct. App. 1981) (explaining that "Section 540.08, by prohibiting the use of one's name or likeness for trade, commercial or advertising purposes, is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher"); *Nat'l Football League v. Alley, Inc.*, 624 F. Supp. 6, 10 (S.D. Fla. 1983) ("Section 540.08 of the Florida Statutes prohibits unconsented use of an individual's name and likeness only when such directly promotes a commercial product or service."). "When considering misappropriation claims in Florida, courts have construed a defendant's use of a plaintiff's name or likeness for 'purposes of trade' narrowly to mean the 'direct promotion' of a commercial product or service, such as T-shirts, hats, coffee mugs, and the like." *Love v. Jackson*, 2015 WL 11237645, *4 (S.D. Fla. 2015).

Plaintiff does not and cannot allege that Defendants used her image for purposes of trade or for any commercial or advertising purpose. That is, Namecheap did not use Plaintiff's image to directly promote its services as a registrar of internet domain names and WhoisGuard did not use her image to promote its privacy services. Indeed, nothing in the advertisement makes mention of Defendants or the services they provide. *See Id*. at Exh. B, C. Plaintiff alleges only that her image was used as an advertisement for Best Buy as well as for Coupons. SAC ¶¶ 9-10. Plaintiff does not even allege that Namecheap used Plaintiff's image for commercial use. Plaintiff's only

9

allegation of commercial use for WhoisGuard is that it was "complicit with COUPONS in the subject advertisement." *Id*. at ¶ 26. However, Plaintiff states no facts supporting her conclusory allegations including that WhoisGuard specifically used the image for a commercial use.

For these reasons, Plaintiff has failed to state a claim Under F.S. 540.08 against Defendants.

**IV.     Plaintiff Fails to State a Claim Against Defendants for Common Law Invasion of Privacy.**

"Under Florida law, the elements of common law invasion of privacy—commercial misappropriation of likeness coincide with the elements of unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08." *Lane v. MRA Holdings LLC*, 242 F. Supp. 2d 1205, 120 (M.D. Fla. 2002); *Almeida*, 456 F.3d at 1320 n. 1 (the elements establishing both claims "are substantially identical"). Based on the analysis of Plaintiff's statutory claim of Fla. Stat. § 540.08 above, Plaintiff also cannot state a claim for common law misappropriation of image against Defendants.

**V.     Plaintiff Fails to State a Claim Against Defendants for Intentional Infliction of Emotional Distress.**

In order to state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must allege: 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff and 4) that the conduct complained of caused the plaintiff's severe emotional distress. *Broberg v. Carnival Corp.*, 303 F. Supp. 3d. 1313, 1317 (S.D. Fla. 2017), *citing Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d. 1264, 1269 (S.D. Fla. 2016). Under the first prong, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla. 1985). "While there is no

exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d. 1334, 1339 (S.D. Fla. 2012). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law for the court to decide, not a question of fact." *Broberg*, 303 F. Supp. 3d. at 1318. In evaluating whether conduct reaches this level, the court must make an objective determination, and the subjective response of the person suffering emotional distress does not control. *Liberty Mut. Ins. Co. v. Steadman*, 968 So.2d 592, 595 (Fla. 2d Dist. Ct. App. 2007).

Vague and conclusory allegations are not sufficient to support a claim of outrage. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"); *see also Phillippou v. Am. Nat'l Property & Casualty Co.*, 2017 WL 2129900, *2 (M.D. Ala. May 16, 2017). (denying a claim for intentional infliction of emotional distress where plaintiffs' sole claim of outrageous behavior by defendant was the statement that defendant's conduct was "so barbaric and beyond such decency, it was foreseeable by its actions to cause mental anguish.").

Plaintiff has not and cannot plead that Defendants' conduct was so extreme and outrageous as to support the extremely high standard necessary to make a claim for intentional infliction of emotional distress. In fact, the only allegation Plaintiff makes regarding Defendants' behavior is simply that it "participated" in the publishing. SAC, ¶¶ 25, 26, 62, 67.  As stated above, these allegations are conclusory and lack any factual support,

To demonstrate that the defendant's infliction of mental suffering was deliberate or reckless, the plaintiff must show that the defendant's conduct was directed at plaintiff. *See Baker v. Fitzgerald*, 573 So.2d 873, 873 (Fla. 3d Dist. Ct. App. 1990). Plaintiff's SAC contains only

11

conclusory allegations that Defendants "recklessly inflicted great mental suffering in the life of Anderson who has had to endure extreme and severe rejection and stress." SAC ¶¶ 62, 67. Plaintiff has not and cannot plead that Defendants directed any conduct at Plaintiff. Defendants could not even be said to have had any prior knowledge of Plaintiff or the alleged incident at the Best Buy store.

Therefore, Plaintiff fails to plead any deliberate or reckless conduct by Defendants and Plaintiff's Count for Intentional Infliction of Emotional Distress against them must be dismissed.

**VI.    Plaintiff Fails to State a Claim Against Defendants for Unjust Enrichment.**

To state an unjust enrichment claim, a plaintiff must allege (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Crawford's Auto Center, Inc. v. State Farm Mutual Automobile Ins. Co.*, 945 F.3d 1150, 1161 (11th Cir. 2019); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). "To satisfy the first element, the Supreme Court of Florida has said that 'the plaintiff must directly confer a benefit to the defendant.'" *Vibo Corp. Inc., v. Flue-Cured Tobacco Growers, Inc.*, 762 Fed. Appx. 703, 705 (11th Cir. 2019), *citing Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017).

Plaintiff's conclusory allegations of the above elements are insufficient to state a plausible claim for unjust enrichment against Defendants. Plaintiff's SAC is devoid of any facts supporting such a claim. Plaintiff alleges that "[t]he Subject Advertisement with Plaintiff Anderson's misappropriated photograph has (1) conferred a benefit on Namecheap [and WhoisGuard] who has knowledge thereof; and (2) for over 4 years Namecheap [and WhoisGuard] has voluntarily accepted and retained the benefit conferred." SAC, ¶¶ 80, 84. However, Plaintiff states no facts

supporting these conclusory allegations, including facts about what the conferred benefit is and how that benefit is conferred on Defendants. Additionally, Plaintiff states no facts to support her allegation that Defendants have any knowledge of this alleged benefit or that either retained any alleged benefit.

Plaintiff further alleges that "[b]ecause the Subject Advertisement will forever be available online in the archives, the said defendant will forever continue to accept and retain the benefits under circumstances that make it inequitable for it to do so without paying the value of it." SAC, ¶¶ 81, 85. But, again, Plaintiff fails to state any facts to support her allegations. Notably, Plaintiff's SAC does not state any facts supporting the inference that Defendants receive any additional payment or benefit based on the number of visits or views to a particular website for the domain it registers.[2]

Therefore, Plaintiff fails to state a claim for unjust enrichment against either Namecheap or WhoisGuard.

**VII. Plaintiff Fails to State a Claim Under Count 17 for Agents of Undisclosed Principal.**

For Court 17 of the SAC, Plaintiff alleges that Defendants and Does acted as the agents of one another, that they conspired together to conceal the identity of the owner of Coupons, and that somehow, they acted as the owners of Coupons and are responsible for the content. Plaintiff also alleges that they owed a duty to Plaintiff to make sure that the content on Coupon's website did not injury Plaintiff.

These sort of allegations i.e. a mere recitation of the elements of a claim without any factual support, are exactly the sort that the *Iqbal* court deemed insufficient to state a claim. See *Iqbal*,

---

[2] Defendants, in fact, do not receive any benefit from hits to a website. In this case, it only derives income from the annual registration fee from its customers.

556 U.S. at 678 (A plaintiff must allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."). As the Eleventh Circuit has also noted, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188.

Here, Plaintiff has failed to allege any facts to support her conclusory allegations, including that Defendants were involved in the publishing of the content in the Subject Advertisement on Coupon's website. Moreover, as Plaintiff admits and as the WhoisGuard Service Agreement shows, Namecheap is simply the domain name registrar for Coupons, and WhoisGuard only administers the domain and keeps the owners of Coupons' contact information from being disclosed in the public record. *See* SAC, ¶¶ D, E; Exh. A, ¶ 2. Neither Defendants were involved in the publication and had no knowledge or control of Coupons' website.

As such, Plaintiff's claim under Count 17 fails.

**VIII. Conclusion**

For all the foregoing reasons, Plaintiff's SAC is irreparably defective. Namecheap's Rule 12(b)(6) Motion should be granted and all claims asserted against Namecheap and WhoisGuard should be dismissed with prejudice for failure to state a claim.

Respectfully submitted April 2, 2020.

                                              *s/ Stephen H. Luther*
                                              Stephen H. Luther
                                              Florida Bar No. 528846
                                              sluther@allendyer.com
                                              **ALLEN, DYER, DOPPELT**
                                              **& GILCHRIST, P.A.**
                                              255 S. Orange Avenue, Suite 1401
                                              Orlando, Florida 32801
                                              Tel. (407) 841-2330
                                              Fax: (407) 841-2343
                                              **Attorneys for Defendants Namecheap,**
                                              **Inc. and WhoisGuard, Inc.**

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by the United States Middle District Court's Case Management/Electronic Case Filing (CM/ECF) system to all counsel of record on this 2nd day of April, 2020.

            Respectfully submitted,

            *s/ Stephen H. Luther*
            Stephen H. Luther